The next case this morning is 521-0085, People v. Jenkins, arguing for the defendant appellant is Ariane Stein, arguing for the appellee state is Pamela Wells. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Okay, good morning ladies. Ms. Stein, are you ahead? May it please the court and counsel. Again, my name is Ariane Stein on behalf of Darius Jenkins. I'll be addressing the first issue in the briefs concerning the order of granting a new trial, but I'll be happy to answer questions on any of the issues. After a crankle remand and a full evidentiary hearing, Judge McGlynn granted Jenkins a new trial because he found that trial counsel was ineffective and that the state committed prosecutorial misconduct. Judge Hitzeman, without having heard the evidence at the hearing, reversed that ruling and granted the state's motion to reconsider. I'd first like to address the standard of review here because this is an unusual situation. Typically, when crankle claims reach an evidentiary hearing and are resolved on the merits, review is for manifest error. And if this court was reviewing Judge McGlynn's ruling, granting a new trial, that would be the proper standard because McGlynn observed the witnesses and determined their credibility. However, this court is now reviewing Judge Hitzeman's order, granting the state's motion to reconsider. And the purpose of a motion to reconsider is to bring to the trial court's or newly discovered evidence. Here, there was no change in the law and no new evidence, and Judge McGlynn didn't misapply any law. So Judge Hitzeman had no grounds to grant the motion to reconsider. If the state is arguing that Judge McGlynn misapplied the law in granting a new trial, then the review of Judge Hitzeman's order is de novo. But Judge Hitzeman tried to reweigh the evidence, and his order made clear that he wasn't aware of all of the facts or all of the claims that were litigated below. And so Jenkins is asking that this court affirm McGlynn's ruling and reverse Judge Hitzeman's order. We can see that Judge McGlynn's ruling was proper when we look at the evidence from trial and the hearing. At the jury trial, the state relied on three eyewitnesses, Tiara Payne, Dorian Schouler, and Arthur Reed. Payne was not credible, so the state relied on the testimony of Schouler and Reed to bolster Payne's account. As Judge McGlynn found, trial counsel was ineffective for several reasons relating to the impeachment of Schouler and Reed. First, counsel was ineffective for failing to call Officer Waters to testify to rebut Schouler's testimony. Schouler testified he was at the scene immediately after the shooting, and he testified to the victim's excited utterance identifying Jenkins as the shooter. Officer Waters was the at the scene when he arrived. Only Payne was there. There was no strategic reason for counsel to fail to call Waters to rebut that Schouler was at the scene. Waters' name was listed in discovery as the first responding officer, so counsel should have been aware of his involvement. And notably, Jenkins' trial counsels were inexperienced. One testified that this case was his first felony trial. The other said it was his first murder trial. And in fact, at the evidentiary hearing, the defense asked trial counsel if he would have called Officer Waters had he known Waters would say Schouler was not at the scene. And trial counsel said absolutely he would have called Waters. So trial counsel admitted that it was unreasonable to fail to call Waters at trial. Judge Hitzeman's ruling, which reversed the order for a new trial, revealed, I'm sorry, again, Your Honor, Judge Hitzeman, that he didn't understand the facts or the reasons why Waters was important for the defense. Judge Hitzeman said that Waters would have corroborated that Payne was at the scene and that Waters merely testified about trial control. Hitzeman did not recognize that Waters would have rebutted Schouler's testimony, which repeated a decedent's excited utterance identifying Jenkins. Waters' testimony, therefore, would have been significant impeachment for the defense. And it's important to note the other problems with Schouler's prejudice, because these problems reveal Schouler likely wasn't at the scene at all. Schouler testified the decedent spoke and identified Jenkins, but the medical examiner testified that victim Brown was immediately paralyzed and that it was a toss-up as to whether Brown could even speak after being shot. Payne testified that Brown was gurgling and had blood coming out of his mouth right after the shooting. So that also contradicts Schouler's speech. And if Schouler was at the scene with Payne, why didn't Payne also hear Brown speak and identify Jenkins? Also, Schouler said he heard gunshots, then saw Brown run and fall, but the medical examiner said Brown was immediately paralyzed. He wouldn't have been able to run after the gunshots. Schouler was Brown's cousin. He said he wanted justice, yet he waited a month and a half after the incident before speaking with police. Detective O'Brien testified that when he talked to Payne at the hospital, she told him that Schouler and someone named Mike and Mike's girlfriend were also out there, and she thought they may have seen what happened. Now, we don't know who Mike and his girlfriend are, but if Schouler was with Payne at the decedent's body right after the shooting, she would have made that more clear to the detective. Instead, it sounds like she was naming people who may have been in the crowd that showed up later, or she was naming people from the neighborhood she hoped would corroborate her story, which is essentially what Schouler did. He didn't talk to police until a month and a half later, then he magically appears and says he heard the decedent identify Jenkins. The prejudice is evident as well when we look at how Schouler's testimony affected Tiara Payne's account. Payne was the only witness who saw the actual shooting, and there were many problems with her testimony. She was a drug addict who was high the day of the incident. She told police the shooting took place at 1 a.m. when it really took place at 9 p.m. Detective O'Brien testified he was going to take Payne's video statement the night of the shooting, but because Payne appeared so out of sorts, he decided not to take it, and Payne spoke with police the night of the shooting, and again a month and a half later, yet the state still didn't charge Jenkins until seven months later, likely because they found Payne's account incredible. So the testimony of the other witnesses that the state then found, Schouler and Reed, was important for the state's case to shore up Payne's testimony. Had Officer Waters been called to testify that Schouler was not at the scene, Schouler's entire account would have been called into question. Judge McClinn also found that counsel was ineffective for failing to impeach Arthur Reed and that the state committed prosecutorial misconduct for procuring Reed's perjured testimony. Reed was brought to court at the last minute the day trial was supposed to start, and he testified at trial that while he was hiding in the weeds, he saw Jenkins run by him after the shooting holding a gun. Reed recanted that testimony in an affidavit and with new testimony at the evidentiary hearing. He said he was not at the scene of the incident. He only testified he was there because the prosecutor threatened to charge him with a crime and because he wanted the prosecutor to move him from Lawrence Correctional Center to the county jail to be closer to his family. Now prior to trial, defense counsel and the state knew that Reed had lied in previous cases to make deals for himself because defense counsel told the court it knew Reed was known to do that. Jenkins presented the court with Reed's 2011 affidavit where Reed said that he lied in a different case, and Jenkins said that he gave defense counsel this affidavit before trial. Counsel was ineffective for failing to use that information to impeach Reed, and Judge Heitzeman didn't even realize that this was one of the ineffective assistance claims. His order didn't address this issue, didn't even mention Arthur Reed. We can look at the other problems with Reed's testimony to assess prejudice. Reed testified at the trial that he saw Jenkins carrying a gun at the scene, and also that he had seen Jenkins with the same gun on previous occasions. Reed testified Jenkins visited him the next day and made him feel threatened, so the jury was given the impression that Jenkins was a dangerous, threatening person who carried a gun. But at the evidentiary hearing, both Reed and Jenkins testified they didn't know each other. Reed hadn't seen him before. The prejudice is even more clear when we consider that Jenkins presented alibi witnesses who said he wasn't at the scene. As Judge McGlynn found, counsel's failure to impeach Reed and the state's use of Reed's perjured testimony indicates a new trial should be granted. And for these reasons, Jenkins requests that this court reinstate Judge McGlynn's order granting a new trial and reverse Judge Heitzeman's granting the motion to reconsider. Okay, Justice Moore, any questions? No. Justice Vaughn? No questions. All right, thank you, Ms. Stein. You'll have a few minutes after Ms. Wells. Ms. Wells for the state? You're on mute. I am so sorry about that. There you go. Thank you. Your honors, counsel, may it please the court. I will address issue one, but I also briefly will address the forfeiture argument with issue two because I think the expansion of Crankle post remand to add additional counts is very important to look at that. Now, as to argument one, the original order of Judge McGlynn did not address Arthur Reed and it did not address the additional evidence of flight. It was a general catch-all comment about other effectiveness, but it did not name those two errors. And so Judge Heitzeman did not address that in his. He focused on the failure to call waters and he focused on the prosecutorial misconduct. And counsel is correct when she says that it is errors in the court's previous application of existing law that Judge Heitzeman was considering. One of those factors is the prosecutorial misconduct was not an issue dealing with ineffective assistance of counsel. It was not pled in the written motion. It was not argued by counsel at the Crankle hearing. It was never addressed as a reason for a new trial. So it was not focused on by the prosecution. It was not focused on by the defense and specifically the prosecution in their closing argument at the Crankle hearing said, this is about ineffective assistance of a defense counsel. The prosecutorial conduct, the procuring perjured testimony affirmatively by telling him what to say was not before the court. There are ways to address that. It is a very serious claim, but that is what the post-conviction petition would be for. If they filed one, there would be a full hearing, including calling the other prosecutor who was in the room with Mr. Crist and Reed at the time that that occurred, if it occurred. But that hearing was not held because the focus was on defense counsel. And to try to, in hindsight, say this was fully litigated is absolutely incorrect. So Judge Heitzman clearly said this was not before the court. This was a misapplication of the law to consider the prosecutorial misconduct allegation. And so when addressing the ineffective assistance of counsel, he said the only named error that he could find in Judge McGlynn's order was the failure to call waters. And he looked at what counsel said, which was our strategy, our purpose was to use the medical testimony. And toss-up is 50-50. It doesn't mean that he couldn't talk or that he didn't talk. Toss-up is they didn't know, but heard it, and Payne wasn't with them at the time. But Ms. Wells, wasn't the issue whether Schouler was there at all? The issue was whether Schouler was there at all. And if counsel had called waters to testify about whether he was there or whether he saw him, and his affidavit was unclear. I don't know if somebody else was there. And when he testified, no, nobody else was there, but he might've been there in the crowd. I don't know. So the testimony of waters was not as unequivocal as it is portrayed, especially when looking at his affidavit. But the prejudice... Does he say that somebody, that there was a possibility that Schouler was in the crowd? Yes. He says he does not know if he was in the crowd. He does not know. He does not know. That's different than saying there's a possibility he was. Right. He does not know one way or the other. So it is, if he doesn't know, it's possible that he was. And he didn't, he wasn't able to identify Schouler by name because he knows people by their street names and he knows them by their face. So to say whether he even knew who he was talking about as far as Schouler, it's unclear from that record. And his affidavit is very clear that when he arrived, he remembers the victim and he remembers pain and he does not remember if anyone else was there. So the question as to whether he was there and whether it was prejudice, when you look at pain identifying Schouler as being there from the very initial interview with the police, not with Waters because she was hysterical. He describes her as hysterical, pleading with the victim. She's just seen her husband shot and killed in front of her. She's had a gun pulled on her. That's understandable. But as soon as she is at the hospital, she is identifying that Schouler was a witness and that police should talk to him. She didn't know his full name. It's not uncommon as the police testified. So the prejudice prong is really where Judge Heitzman said, this just wasn't proven. And it is defendant's burden to show that in an effective assistance of counsel as the law bears out. So we do not believe that Judge Heitzman's order was error in reversing it because the prosecutorial misconduct was not before the court and prejudice was not shown. Even if they had added Waters that could have opened up additional testimony that from the moment of the shooting, Tierra Payne was identifying Darius Jenkins as the shooter. So I don't think you can get to ineffective assistance of counsel at that point. As to argument two, the people want to be very clear when a case is remanded for Crankle and it comes back before the appellate court, the only issues that are to be addressed according to abeyance. And that is in Crankle at page 189. The claims to be considered after remand are the remaining issues raised in the appellate court that were not addressed. To expand that is to defendant a second bite at the apple. It's to encourage piecemeal litigation. And I know in the reply brief, it was said, well, we can just bring this in a post-conviction petition so it should be addressed now. Well, the standards in a post-conviction petition on ineffective assistance of counsel are very different. It is, was there a strategy in not raising it to begin with? And would there been prejudice? And so if he wants to raise this in a post-conviction counsel, it is reviewed at a very different standard. And we do not believe that when counsel chooses to not raise an issue in their first appeal, it goes back on Crankle that they be able to add subsequent claims. It just, it encourages piecemeal litigation. It is not acknowledged in Crankle itself where it says the claims to be considered are the original ones. And so we would ask that that be limited. If there are questions on any other area in the briefs, I'd be happy to answer those as well. Justice Moore? No questions. Justice Fallin? No questions. Thank you. Thank you, Ms. Wells. Rebuttal, Ms. Stein? Yes. Thank you, Your Honor. I'll start with the state's argument that this case was, they argue it's only remanded for a Crankle inquiry so that the prosecutorial misconduct claim is not properly before the court. But a Crankle hearing is an extension of a motion for new trial. New counsel was appointed. And if new counsel investigates and finds evidence of perjury, counsel can't ignore that. Counsel would have an obligation to present that to the court. And Judge McGlynn heard Reed's testimony that he perjured himself, found him credible, and properly because then the state would be on notice of the claim and could defend against it. But the state knew this issue was being litigated. They didn't present any evidence to rebut the claim of perjury. The state hasn't previously said what evidence could be brought in that would rebut this claim. The prosecutor who allegedly coerced Reed was ASA Joe Christ, who has since testified. And it doesn't make sense to force Jenkins to file a post-conviction petition and wait to have a new hearing granted where Reed would testify all over again. So for judicial efficiency, this court can review the claim. And the prosecutor has argued that, the state here has argued that the defense did not argue the prosecutorial misconduct claim below. And while that claim was not in the written motion, it was argued orally by counsel on pages 972, 983, and 1010 of the transcripts. At that last page, counsel said, I think prosecutorial misconduct certainly existed in this case. And even if this court finds that the prosecutorial misconduct claim is not properly before it, Judge McGlynn granted a new trial based on the ineffective assistance claims as well. So this court can reinstate Judge McGlynn's order for that reason. Next, the state argued that McGlynn's order didn't say it was premised on counsel failing to impeach Reed. But this issue was covered by McGlynn's order, where McGlynn said other errors of counsel contributed to the overall ineffective assistance claims. This court's review is not limited to the words in McGlynn's order. Rule 615b2 allows a reviewing court to rule on all of the proceedings related to the judgment. And this issue was certainly litigated as part of that proceeding. The state also points out that Waters' affidavit said he didn't remember anyone else being at the scene, but that there could have been someone else there. However, the state didn't bother to ask Waters about that point at the evidentiary hearing. And Waters' subsequent testimony made clear that Payne was the only person with the victim when Waters arrived. Where his affidavit said that there could have been other people at the scene, Waters may have been referring to people who showed up a few minutes later in the crowd that gathered. Judge McGlynn had Waters' affidavit at the time of the granted a new trial. Notably, Waters testified that Payne never told him that anyone else was present and never mentioned the name Schouler. The police testimony and reports indicated that none of the officers were aware of Schouler's involvement until Payne mentioned him in the hospital later that night. So Waters' testimony that Schouler was not present is supported by the fact that other officers didn't know about Schouler. And it rebuts Schouler's testimony that he was there immediately after the incident, that he spoke with police, and that he stayed on the scene until an ambulance arrived. Concerning issue number two, I'll briefly mention that the case is still on direct appeal. The court has two other issues that were raised in the initial direct appeal briefs. So there's no reason that it couldn't decide this other issue as well. And for judicial efficiency, Jenkins asked that this court review that claim as well. All right. Does that conclude your argument? Yes, Your Honor. Justice Moore, any questions? No. Justice Vaughn? Questions. Thank you. All right. Thank you for your arguments. This matter will be taken under advisement. We'll issue an order in due course. That concludes the oral arguments for this case. Thank you.